IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Wiley Y. Daniel

Civil Action No. 06-cv-00419-WYD

RUSSELL RATH,

      Applicant,

v.

THE ATTORNEY GENERAL OF THE STATE OF COLORADO, and
JAMES KEITH, Warden, Bent County Correctional Facility,

      Respondents.

---

## ORDER DENYING 28 U.S.C. § 2254 APPLICATION

---

Applicant, Russell Rath, is a prisoner in the custody of the Colorado Department

of Corrections (DOC) who currently is incarcerated at the Colorado Territorial

Correctional Facility in Cañon City, Colorado. Mr. Rath has filed *pro se* an amended

application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his

Colorado state conviction and sentence and a supporting brief. In an order filed on May

16, 2006, I directed the respondents to file within thirty days an answer to the habeas

corpus application. On June 5, 2006, the respondents filed their answer. On June 13,

2006, Mr. Rath filed a traverse to the respondents' answer. On June 16, 2006, he filed

a document treated as an addendum to the traverse. On June 22, 26, and 27, 2006, he

further supplemented the application and traverse.

I must construe liberally the application, the supporting brief, the traverse, and

the other papers filed by Mr. Rath because he is representing himself. *See Haines v.*

*Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, I should not be the *pro se* litigant's advocate. *See Hall*, 935 F.2d at 1110. After reviewing the entire file, I find that an evidentiary hearing is not necessary. For the reasons stated below, the habeas corpus application will be denied.

I. <u>Factual and Procedural Background</u>

The background of this case was summarized by the Colorado Supreme Court in *People v. Rath*, 44 P.3d 1033 (Colo. 2002), as follows:

> The charges against the defendant arose from the alleged rape of fifteen-year-old T.C. The prosecution's theory was that just before noon on October 18, 1995, while walking home from school on a rural mountain road in Jefferson County near Nederland, the victim was offered a ride by the defendant, taken to a secluded dirt road, dragged down a hillside, and raped by him. The prosecution presented its case at trial largely through the testimony of the victim; relatives, police, and hospital personnel to whom she reported the assault; and coworkers of the defendant to whom he had given contradictory accounts of the incident. The prosecution also presented the testimony of four other women, each of whom was approached on a public street by the defendant, offered a ride, taken to a secluded place, and allegedly subjected to some form of attempted or completed sexual assault. Although the defendant did not testify at trial, his contention that he had merely given the victim a ride and that she was a "pathological liar," who fabricated the sexual encounter to get attention from family members, was presented through cross-examination, defense witnesses to the lack of corroborating physical evidence, and his counsel's opening and closing statements.
>
> As the only admitted witness of the attack, the victim provided the only first-hand testimony about the details of the currently charged assault. She testified at trial that she accepted the defendant's offer of a ride to a point near her home. Upon arriving there the defendant refused to stop, saying that he needed to go to the store and would then take her back to where she wanted to go. Instead of going to a store, however, the victim testified that the defendant took

her to a secluded dirt road where he stopped the vehicle and told her that he wanted to show her something in the woods. While she at first refused to get out of the truck, she eventually relented, whereupon the defendant physically dragged her down the adjacent hillside and forcefully sexually assaulted her by vaginal intercourse.

Among other details, she testified that the defendant removed all of their clothing except his shirt and commented during the assault that she had a "nice mole" on her leg. She also testified that following the assault, she accepted a ride from the defendant to a point near her destination where he apologized for his conduct, saying that next time he would not do this sort of thing, and allowed her to leave. After walking home, she vomited and immediately undressed to shower, finding a twenty dollar bill in her pant leg that she did not have before the assault. After showering, she called family members and eventually the police.

The subsequent emergency room examination produced no physical evidence of sexual assault. Similarly, the defense produced evidence indicating that the tire tracks found on the road near the scene identified by the victim did not match the tires on the defendant's truck at the time the police made contact with him several weeks later and evidence challenging the feasibility of the victim's time estimates. There was, however, bruising on the victim's shins where she claimed the defendant sat while pulling off her clothing and an indentation on her abdomen that could have been caused by weight pressing against her cigarette package.

The prosecution also presented the testimony of the four women who claimed to have been picked up and taken to a secluded location during a ten-month period in 1981-82, when they were between twelve and twenty years old, by someone later identified as the defendant. Although the details of the incidents varied, each began with the offer of a ride from the defendant, which the young women accepted either voluntarily or as the result of threats, followed by a drive to a secluded location and some indication by the defendant that his intent was to have sexual relations. In two of the cases, the women were actually sexually assaulted by penetration; in a third case the woman, L.L., testified that the defendant physically forced her into the

back of his camper, climbed on top of her, and fondled her breasts, until her resistance and crying led the defendant to let her go to find her own way home; and in the last case, the twelve-year-old girl, to whom the defendant had given five dollars to allow herself to be photographed, fled when he crawled into his truck bed and enticingly invited her to join him to see his camera.

In three of the cases, the defendant showed the women a camera and either took photos or described his interest in taking photos of young women and either gave the young women a small amount of money as an enticement or left a small amount of money with them after the assault. In the two cases in which the defendant was able to complete the sexual penetration (one by vaginal intercourse and the other by forced fellatio), the defendant removed all of his clothing but his shirt and managed to partially or completely disrobe his victim, commenting about some physical feature that became visible – in one case a scar and the other the woman's "fuzzy," unshaved legs. After each completed assault, the defendant was conciliatory or matter-of-fact about doing this sort of thing and offered to drive the victim where she wanted to go.

*Id.* at 1036-37.

Mr. Rath alleges that he was convicted by a jury in the Jefferson County District Court on charges of second-degree kidnapping and first-degree sexual assault. He was sentenced on August 26, 1996, to sixteen years of imprisonment in the DOC plus five years of mandatory parole. On June 3, 1999, in *People v. Rath*, No. 96CA1773 (Colo. Ct. App. June 3, 1999) (not selected for publication) (*Rath I*), the Colorado Court of Appeals reversed and ordered a new trial, holding that although evidence of two of the prior sexual transactions involving the defendant properly were admitted, the trial court abused its discretion in admitting the other two. The appeals court held that the admission of the incidents involving the women identified as L.L. and P.B., in which the encounters ended short of sexual penetration, was error because they were not related

4

to the occurrence of sexual intercourse, which the appeals court considered to be the only "contested" issue at trial, *Rath I*, slip op. at 4, and because they were not "sufficiently substantially similar" to the then-current charges to be introduced under Rule 404(b) of the Colorado Rules of Evidence and Colo. Rev. Stat. § 16-10-301. *Id.* at 6. As a result, the appeals court did not reach several of the defendant's arguments for reversal.

On April 8, 2002, the Colorado Supreme Court reversed the judgment of the state court of appeals and remanded *en banc* with instructions to reinstate the defendant's convictions, holding that the trial court did not abuse its discretion in admitting, pursuant to Colo. R. Evid. 404(b), these other acts, i.e., the incidents involving the women identified as L.L. and P.B. *See People v. Rath*, 44 P.3d 1033 (Colo. 2002) (*Rath II*). On a later motion of the defendant, the state supreme court amended its mandate and remanded the case to the state appeals court to determine the issues raised but not considered in the defendant's original appeal. On January 9, 2003, the appeals court considered the issues raised but not considered in the defendant's original appeal, affirmed, and remanded for reinstatement of the first-degree sexual assault and second-degree kidnapping convictions by the trial court. *See People v. Rath*, No. 96CA1773 (Colo. Ct. App. Jan. 9, 2003) (not selected for publication) (*Rath III*). Certiorari review was denied on July 28, 2003.

On May 21, 2002, Mr. Rath filed a postconviction motion pursuant to Rule 35(c) of the Colorado Rules of Criminal Procedure that the trial court denied on February 2, 2004, after an evidentiary hearing. On October 20, 2005, the Colorado Court of Appeals affirmed. *See People v. Rath*, No. 04CA0405 (Colo. Ct. App. Oct. 20, 2005)

5

(not selected for publication) (*Rath IV*). On April 10, 2006, the Colorado Supreme Court denied certiorari review.

On February 28, 2006, while Mr. Rath's certiorari petition was pending in state court, this Court received the instant action for filing. Respondents concede that Mr. Rath's application appears to have been filed in a timely manner.

Mr. Rath asserts twelve claims. He alleges that he voluntarily withdrew claim twelve in response to Magistrate Judge Boyd N. Boland's April 11, 2006, order to show cause. However, because Magistrate Judge Boland's May 4, 2006, order discharged the April 11 show-cause order, the respondents have opted to address the merits of claim twelve, as will I. The asserted claims are: (1) evidence of prior alleged "'similar transactions'" was improperly admitted and used to convict the defendant, amended application at 5; (2) collateral estoppel barred use of the "'similar transaction'" regarding L.L. because the defendant had been acquitted of the charges and the elements of collateral estoppel were met, *id.* at 6; (3) the Court of Appeals denied the defendant due process and the right of appeal by denying the defendant material and substantial parts of the record as designated for appeal, and by failing to adjudicate the issues; (4) selective application of court rules prevented the defendant from raising on appeal important issues of trial and postconviction error; (5) the evidence was insufficient to support the convictions; (6) a fraudulent trial record denied the defendant due process and the right of appeal; (7) ineffective assistance of trial counsel, by individual acts and omissions and in their aggregate, so undermined the trial's adversarial process that it failed to produce a just result; (8) judicial bias and error, in individual acts and in their aggregate, denied the defendant a fair trial by an impartial judge and jury; (9)

6

prosecutorial misconduct, in individual acts and in their aggregate, denied the defendant a fair trial by an impartial jury; (10) appellate counsel provided prejudicial ineffective assistance on direct appeal; (11) selective application of state law denied the defendant due process and a fair trial; and (12) Colorado appellate rules and practices have denied the defendant due process and a meaningful appeal by their unduly dilatory nature and application, and excessive appellate delay has visited a hardship on the defendant and violated his right to due process.

## II. Exhaustion of State Remedies and Procedural Default

Respondents have moved to dismiss claims three, four, and twelve, and part of claims eight and nine, arguing that Mr. Rath procedurally has defaulted these claims by failing to exhaust state remedies and, alternatively, that all his asserted claims fail on the merits. An application may be denied on the merits, notwithstanding the applicant's failure to exhaust the remedies available in the courts of the state. *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005); *see also* 28 U.S.C. § 2254(b)(2). I need not resolve the issues of whether Mr. Rath has exhausted or procedurally defaulted claims three, four, and twelve, and part of claims eight and nine because, for reasons discussed later in this order, I find that the claims lacks merit.

## III. Standard of Review

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or

7

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether Mr. Rath seeks to apply a rule of law that was clearly established by the Supreme Court at the time his or her conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000) (Stevens, J., writing for the Court).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Id.* at 412 (O'Connor, J., writing for the Court).  If a clearly established rule of federal law is implicated, I must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.  *See id.* at 404-05.

The "contrary to" clause allows a writ of habeas corpus to issue "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently that [the Supreme] Court has on a set of materially indistinguishable facts."  *Id.* at 413.  The "unreasonable application" clause allows a writ of habeas corpus to issue "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  My inquiry pursuant to the "unreasonable application" clause is an objective inquiry.  *See id.* at 409-10.  "[A] federal habeas court may not issue the writ simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411.

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Pursuant to § 2254(e)(1), I must presume that the state court's factual determinations are correct and Mr. Rath has the burden of rebutting the presumption by clear and convincing evidence.

I "owe deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, I "must uphold the state court's summary decision unless [my] independent review of the record and pertinent federal law persuades [me] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.*

Finally, if the state court does not address a claim on the merits, I must review the claim de novo and the deferential standards in 28 U.S.C. § 2254(d) are not applicable. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

## IV. Merits of the Claims

### Claims One and Two

Mr. Rath first alleges that similar-transaction evidence improperly was admitted at trial (claim one). He also alleges that collateral estoppel barred the use of evidence

of one of the similar transactions because he had been acquitted of the charges regarding the prior incident (claim two).

Generally, federal habeas corpus relief does not lie to review state-law questions about the admissibility of evidence. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Moore v. Marr*, 254 F.3d 1235, 1246 (10th Cir. 2001). In *Estelle*, the Supreme Court specifically declined to hold that the admission of prior-injury evidence violated due process, thus warranting habeas relief. *See id.* at 75. The Supreme Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of "'prior crimes'" evidence. *Id.* at n.5; *see also Spencer v. Texas*, 385 U.S. 554, 563-64 (1967) (rejecting the argument that the Due Process Clause requires the exclusion of prejudicial evidence, even though limiting instructions were given and a valid state purpose is served, and recognizing that the Supreme Court is not "a rule-making organ for the promulgation of state rules of criminal procedure" and that "none of the specific provisions of the Constitution ordains this Court with such authority."). Because there is no clearly established Supreme Court precedent holding that a state violates due process by permitting propensity evidence in the form of other bad-acts evidence, *see Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003), the admission of prior bad-acts evidence cannot be contrary to clearly established Supreme Court precedent.

Mr. Rath can prevail only if the trial court's admission of the other-acts evidence rendered the trial so fundamentally unfair as to constitute a denial of federal constitutional rights. *See Estelle* at 68; *see also Moore*, 254 F.3d at 1246. A federal habeas court "will not disturb a state court's admission of evidence of prior crimes,

10

wrongs or acts unless the probative value of such evidence is so greatly outweighed by the prejudice flowing from its admission that the admission denied defendant due process of law." *Hopkinson v. Shillinger*, 866 F.2d 1185, 1197 (10th Cir. 1989), *overruled on other grounds by Sawyer v. Smith*, 497 U.S. 227 (1990).

The Colorado Supreme Court determined that the evidence of the two less-similar acts on which the state appeals court reversed was relevant for a number of proper purposes, including to show a common plan, scheme or design, modus operandi, and motive, and that these purposes were independent of any improper inference of propensity. *Rath II* at 1039-41. The state supreme court then balanced this probative value against the danger of unfair prejudice and, after considering a "host of factors," concluded that the probative value of the evidence was not outweighed substantially by the danger of unfair prejudice. *Id.* at 1041-44.

Because the state supreme court did not address the merits of the federal habeas claim Mr. Rath raises here, I will exercise my own independent judgment in deciding the claim. *See Gipson*, 396 F.3d at 1196. It is clear from the state record that the trial court repeatedly instructed the jury to consider the other-acts evidence only for the specified, limited purpose of showing common plan, scheme or design, modus operandi, motive, or intent, and for no other purpose. *See* trial tr., vol. 7, 53, June 18, 1996; vol. 11, 268, July 15, 1996; vol. 12, 68-69, July 16, 1996; vol. 13, 28, July 17, 1996; *see also* vol. 1, 99-101, Apr. 24, 1996, Order, referring to trial tr., vol. 6, 5-43, Apr. 18, 1996. I do not find that the probative value of the prior-acts evidence was outweighed substantially by any unfair prejudice. Having decided as such, I do not find that having the jury consider the prior-acts evidence for a limited, specified purpose

11

rendered the trial as a whole fundamentally unfair as to constitute a denial of federal constitutional rights. Therefore, I find that the state court's decision was not contrary to clearly established federal law.

To the extent Mr. Rath contends that one of the prior acts was barred by collateral estoppel because he had been acquitted of the offense, the claim does not state a federal constitutional question and, therefore, may not be addressed in a habeas corpus action. *See* 28 U.S.C. § 2254(a).

Claims Three, Four, and Twelve

In claims, three, four, and twelve, Mr. Rath attacks his state postconviction review. In his third claim, Mr. Rath alleges that the Colorado Court of Appeals in *Rath IV* denied him due process and the right of appeal by denying him material and substantial parts of the record as designated for appeal, and by ignoring or mischaracterizing many of his issues. In his fourth claim, Mr. Rath asserts that the Colorado Court of Appeals in *Rath IV* selectively applied its rules by limiting him to a thirty-page opening brief while issuing a thirty-seven-page opinion. In his twelfth claim, Mr. Rath contends that the more than two years during which *Rath IV* was pending in the state appeals court denied him the right to a speedy appeal.

These three claims do not challenge the validity of Mr. Rath's conviction or sentence. They do not claim that he "is in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2254(a). Instead, these claims challenge the state appeals court's treatment of his postconviction motion.

There is no federal constitutional right to postconviction review in the state courts. *See Pennsylvania v. Finley*, 481 U.S. 551, 556-57 (1987). A claim of

12

constitutional error that "focuses only on the State's post-conviction remedy and not the judgment which provides the basis for [the applicant's] incarceration . . . states no cognizable federal habeas claim."  *See Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998); *see also Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) (noting that an applicant's challenge to state "post-conviction procedures on their face and as applied to him would fail to state a federal constitutional claim cognizable in a federal habeas proceeding").  Because Mr. Rath's third, fourth, and twelfth claims challenging the state appeals court's treatment of his postconviction motion do not implicate the validity of his conviction or sentence, these claims must be dismissed.

### Claim Five

In his fifth claim, Mr. Rath contends that the evidence was insufficient to support his convictions for first-degree sexual assault and second-degree kidnapping.  He specifically claims that the evidence was insufficient because there was only one complaining witness, i.e., the victim, and the statements she made to the police officers investigating her complaint she later denied and contradicted at trial.  This claim is without merit.

The test for a sufficiency-of-the-evidence claim on federal habeas corpus review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia* , 443 U.S. 307, 319 (1979) (emphasis in original).  "The Court may not weigh conflicting evidence nor consider the credibility of witnesses.  Rather, the Court must 'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'"  *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir.

13

1996) (quoting *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993). In

determining whether the evidence was sufficient to support the conviction, a federal

court must look at both direct and circumstantial evidence. *Lucero v. Kerby*, 133 F.3d

1299, 1312 (10th Cir. 1998). Sufficiency of the evidence is a mixed question of law and

fact. *Maynard v. Boone*, 468 F.3d 665, 673 (10th Cir. 2006).

The Colorado Court of Appeals rejected Mr. Rath's contention that the evidence

was insufficient to sustain his convictions for first-degree sexual assault and for second-

degree kidnapping as follows:

> When reviewing the sufficiency of the evidence, we
> must determine whether relevant evidence, both direct and
> circumstantial, when viewed as a whole and in the light most
> favorable to the prosecution, is substantial and sufficient to
> support a conclusion by a reasonable person that the
> defendant is guilty of the crime beyond a reasonable doubt.
> People v. Duncan, 109 P.3d 1044 (Colo. App. 2004). The
> prosecution must be given the benefit of every reasonable
> inference that might fairly be drawn from the evidence.
> People v. Inman, 950 P.2d 640 (Colo. App. 1997). If the
> prosecution presents evidence from which the trier of fact
> may properly infer the elements of the crime, the evidence is
> sufficient to sustain the conviction. People v. Caldwell, 43
> P.3d 663 (Colo. App. 2001).
>
> In addition, the determination of the credibility of
> witnesses is a matter solely within the province of the jury,
> and only when the testimony of a witness is "so palpably
> incredible and so totally unbelievable as to be rejected as a
> matter of law," can a court properly usurp this jury function.
> People v. Rivas, 197 Colo. 131, 136, 591 P.2d 83, 86
> (1979). Testimony is incredible as a matter of law when a
> witness described events that he or she could not possibly
> have seen or that are not possible under the laws of nature.
> People v. Minjarez, 81 P.3d 348 (Colo. 2003). Testimony
> that is merely biased, conflicting, or inconsistent is not
> incredible as a matter of law. Minjarez, supra.

Here, there was ample testimony by the victim describing in detail the kidnapping and subsequent sexual assault. Although the victim did not know defendant, she testified regarding where he worked because he told her while she was riding in his truck. She accurately described defendant's pickup truck and identified defendant at trial.

Although some of the victim's testimony may have been inconsistent with prior statements that she made to police officers or investigators, the evidence was nonetheless sufficient to support defendant's convictions. See Minjarez, supra.

*Rath IV*, slip op. at 6-8. Mr. Rath has failed to rebut by clear and convincing evidence the recitation of evidence by the Colorado Court of Appeals. Hence, I accept as correct the recitation of evidence by the state appeals court in rejecting Mr. Rath's argument. *See* 28 U.S.C. § 2254(e)(1). I find that a rational juror, in viewing the evidence in the light most favorable to the prosecution, could have concluded that the evidence was sufficient to support Mr. Rath's convictions. Therefore, I cannot conclude that the Colorado Court of Appeals, in reviewing the jury's resolution of the evidence, unreasonably applied Supreme Court precedent in denying Mr. Rath's claim, nor can I conclude that the decision by the state appeals court was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d).

## Claim Six

As his sixth claim, Mr. Rath maintains that a fraudulent trial record denied him due process and the right of appeal. He argues that two court reporters altered the trial record "materially and substantially" by "expung[ing] outrageous government misconduct, evidence of ineffective assistance of trial counsel and judicial error, and

substitut[ing] fictional proper trial proceedings in their place."  Amended application at continuation sheet 3.

Mr. Rath made more detailed allegations in *Rath IV*, in which he claimed that the record failed to reflect the prosecution asking potential jurors during *voir dire* whether they would be able to convict him without evidence.  Mr. Rath also claimed that the transcript from June 19, 1996, the second day of trial when a juror was excused to attend a family emergency, was inaccurate because it represented that the jury was in the courtroom when, in fact, the jury was not present.  Mr. Rath maintains that these and other inaccuracies were fraudulent and not simply transcription errors.

At the Colo. R. Crim. P. 35(c) postconviction hearing, the court reporter testified that she had transcribed accurately "to the best of [her] ability" what had occurred at Mr. Rath's trial and that she was not "aware of any inaccuracies or insufficiencies in the record that [she] prepared."  Trial tr. vol. 15, 17-18, Jan. 30, 2004.  The postconviction court found that Mr. Rath had not met his burden of proving that the trial transcript was inaccurate.

As Mr. Rath points out in his supporting brief, a claim that a transcript has been fraudulently prepared sets forth a Fourteenth Amendment claim of the denial of due process.  *Chessman v. Teets*, 350 U.S. 3, 3-4 (1955).  In *Rath IV*, however, the Colorado Court of Appeals characterized Mr. Rath's claim in terms of inaccuracies in the trial record and not in terms of fraud.  In response to Mr. Rath's claim that the record prepared by the court reporter inaccurately reflected certain evidence and trial proceedings, the appeals court found that Mr. Rath had failed to present any evidence establishing that the record was not correct, and concluded that Mr. Rath's "bare

assertions" of inaccuracies were "insufficient to overcome th[e] presumption" that the record prepared by the court reporter was correct. *Rath IV*, slip op. at 4.

Mr. Rath has failed to rebut by clear and convincing evidence the Colorado Court of Appeals' conclusion that the trial record was correct. Therefore, I accept as correct the state appeals court's factual findings as to the accuracy of the trial record. *See* 28 U.S.C. § 2254(e)(1). Hence, I do not find that the decision by the Colorado Court of Appeals that Mr. Rath failed to demonstrate the inaccuracy of the trial record resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding. *See* 28 U.S.C. § 2254(d)(2).

Claims Seven and Ten

Mr. Rath claims ineffective assistance of counsel by his trial counsel (claim seven) and by his appellate counsel (claim ten). It was clearly established when Mr. Rath was convicted that a defendant has a right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). To establish that counsel was ineffective, Mr. Rath must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense. *See id.* at 687-88. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is a "strong presumption" that counsel's performance falls within the range of "reasonable professional assistance." *Id.* It is the defendant's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances. *See id.* Under the prejudice prong, Mr. Rath must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

17

different." *Id.* at 694. If Mr. Rath fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claim must be dismissed. *See id.* at 697. Finally, ineffective assistance of counsel claims are mixed questions of law and fact. *See id.* at 698.

Sections A through M below address Mr. Rath's claims of ineffective assistance of trial counsel. Section N addresses Mr. Rath's claim of ineffective assistance of appellate counsel.

## A. Six-Person Jury

Mr. Rath first maintains that "[c]ounsel urged a six-person jury on the petitioner, deceiving him by stating that the small panel would aid in gaining an acquittal when counsel actually expected a conviction in the case." Amended application at continuation sheet 3.

The Colorado Court of Appeals applied the proper standards from *Strickland* and rejected Mr. Rath's claim that counsel was ineffective by deceiving him about the benefits and detriments of choosing to have his case tried by a six-person jury instead of a twelve-person jury. The state court specifically determined that Mr. Rath failed to demonstrate that counsel's strategic decision to choose a six-person jury was not objectively reasonable. The state court explained its decision as follows:

> "Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Ardolino, supra, 69 P.3d at 76.
>
> At the postconviction hearing, defendant's trial counsel testified that he had lectured on the topic of jury

selection twice a year for the last ten years and that he had written a legal article on that same topic. He further testified that, under the circumstances, he believed it would be more beneficial to try defendant's case to a six-person jury because he would be able to make more effective use of his peremptory challenges. Trial counsel also testified that he believed it was easier to get a six-person jury to acquit an accused.

We conclude that counsel had a thorough understanding of the law and facts relevant to selecting the size of the jury. It was a strategic decision to choose a six-person jury, and defendant has not presented any evidence regarding how that decision was unreasonable. Therefore, counsel's performance in this regard was not ineffective.

*Rath IV*, slip op. at 10-11. The state court's determination that Mr. Rath failed to demonstrate that his counsel's performance was deficient as a result of his strategic decision to choose a six-person jury did not result in a decision that was contrary to, or involved an unreasonable application of, *Strickland*.

### B. Interlocutory Appeal

Mr. Rath maintains that "[c]ounsel failed to even discuss appealing a critical pretrial evidentiary ruling admitting unfairly prejudicial 'similar transaction' evidence that the State expected a conviction with and without which it would not proceed to trial." Amended application at continuation sheet 4. The Colorado Court of Appeals concluded that because "the supreme court affirmed the admission of that evidence on direct appeal[,] . . . defendant has not suffered any prejudice from counsel's decision not to pursue an interlocutory appeal." *Rath IV*, slip op., at 11-12. The state appeals court properly disposed of Mr. Rath's claim solely on the prejudice prong. *See Strickland*, 466 U.S. at 694 (there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). The

Colorado Court of Appeals' conclusion that Mr. Rath did not suffer any prejudice from counsel's decision not to pursue an interlocutory appeal did not result in a decision that was contrary to, or involved an unreasonable application of, *Strickland.*

## C. Expert Witness

Mr. Rath maintains that "[c]ounsel failed to consult with the petitioner on or to investigate the use of defense expert witnesses to testify on the petitioner's behalf." Amended application at continuation sheet 4. In *Rath IV*, Mr. Rath urged that "[e]xpert testimony could have convinced the jury that neither [the victim] nor the Appellant had been at the 'crime scene' and that [the victim] had not had recent sexual activity." *See* ex. T, Amended Opening Brief of Defendant-Appellant, at 14. The Colorado Court of Appeals disagreed:

> An attorney's decision not to interview certain witnesses and to rely on other sources of information, if made in the exercise of reasonable judgment, does not amount to ineffective assistance of counsel. Moreover, it is within trial counsel's discretion to make the tactical decision of whether to call a particular witness. Davis, supra.

> At the postconviction hearing, the trial court found that the issue regarding the evidence found at the crime scene, or lack thereof, was "very thoroughly investigated by defense counsel." The court further noted that "discovery was obtained . . . two investigators were obtained . . . to interview witnesses which happened to investigate the purported crime scene." The court concluded that the issue of the lack of evidence at the crime scene was "fully investigated" by defense counsel.

> The court also found that, based on the evidence, there was no expert who could testify to the fact of an individual not being at the crime scene, and that defense counsel had fully developed the issue of the lack of evidence at the crime scene through other witnesses.

We conclude that defendant's counsel thoroughly investigated the issue of the lack of evidence at the crime scene, and he did not render ineffective assistance by not calling an expert witness because there was not an expert that could testify that neither defendant nor the victim was present at the crime scene.

*Rath IV*, slip op. at 12-13.  The Colorado Court of Appeals' conclusion that Mr. Rath's trial counsel did not provide ineffective assistance by his tactical decision not to call an expert witness did not result in a decision that was contrary to, or involved an unreasonable application of, *Strickland*.

### D.  Prosecutorial Misconduct

Mr. Rath maintains that "[c]ounsel failed to challenge the State's witness-tampering prior to trial and failed to object to outrageous government misconduct during the trial."  Amended application at continuation sheet 4.  The Colorado Court of Appeals disagreed that defense counsel's performance was ineffective because he tolerated certain prosecutorial misconduct:

Defendant first contends that counsel was ineffective because he did not object to the prosecutor's question during voir dire regarding whether potential jurors could convict defendant without any evidence.

Initially, we note that the People dispute that the prosecution ever asked that question of the jurors because that is not what the record reflects.  However, even if the record is inaccurate, we have already concluded that this alleged error did not undermine the fairness of the trial because ultimately the evidence was presented to the jury, and the jury was properly instructed on the law.  Accordingly, defendant has failed to show how he was prejudiced by counsel's failure to object to the alleged question during voir dire.

Next, defendant contends that his counsel knew that the prosecutor lied to a witness by telling the witness that

> defendant had previously been convicted of sexual assault, and therefore, counsel provided ineffective assistance by not challenging that misconduct.
>
> However, the witness testified at the postconviction hearing that no one ever told her that defendant had been previously convicted of sexual assault. Therefore, the trial court found that there had been no prosecutorial misconduct in that regard.
>
> The record supports the trial court's finding, see Stead, supra, and therefore, defendant has failed to show how he suffered any prejudice from counsel's decision not to object. Strickland, supra.
>
> Defendant also contends that counsel provided ineffective assistance by not objecting to the prosecution's statements in closing that defendant had previously assaulted other women. However, the evidence of other similar acts was properly admitted at trial, and the prosecution is allowed to argue the facts in evidence and any reasonable inferences that may be drawn from those facts. People v. Moody, 676 P.2d 691 (Colo. 1984). Accordingly, counsel did not provide ineffective assistance by not objecting to the prosecution's closing argument. See Strickland, supra.

*Rath IV*, slip op., at 14-16. The Colorado Court of Appeals' conclusion that Mr. Rath's trial counsel did not render ineffective assistance by tolerating certain alleged prosecutorial misconduct did not result in a decision that was contrary to, or involved an unreasonable application of, *Strickland*.

### E. Lay Witness

Mr. Rath maintains that "[c]ounsel failed to call 'lay' witnesses whom the petitioner had instructed him to use and kept his plan secret from the petitioner until confronted with their absence at trial." Amended application at continuation sheet 4. In *Rath IV*, Mr. Rath elaborated that he had "instructed counsel to call friends to testify

about his work training on sexual harassment issues and perfect work record with female subordinates." *See* ex. T, Amended Opening Brief of Defendant-Appellant, at 15.

The Colorado Court of Appeals concluded that counsel did not provide ineffective assistance by not calling lay witnesses:

> [W]hether to call a particular witness is a tactical decision within trial counsel's discretion. <u>Davis</u>, <u>supra</u>.
>
> At the postconviction hearing, counsel testified that he did not call defendant's coworkers as witnesses because his investigation revealed the defendant was required to undergo sexual harassment training based on a complaint of sexual harassment, and because two of the witnesses could offer no relevant or beneficial testimony. We conclude that counsel acted properly in not calling those witnesses, and therefore, he did not provide ineffective assistance in that regard. <u>See</u> <u>Strickland</u>, supra.

*Rath IV*, slip op., at 16. The Colorado Court of Appeals' conclusion that Mr. Rath's trial counsel did not render ineffective assistance by his strategic decision not to call lay witnesses did not result in a decision that was contrary to, or involved an unreasonable application of, *Strickland.*

## F. Failure to Investigate

Mr. Rath maintains that:

> [He] informed counsel that the complaining witness had made the false allegation as revenge for the petitioner's firing of her friends at a ski resort where the petitioner managed several departments. The petitioner gave counsel names of witnesses to interview regarding this matter. Counsel failed to interview any of the witnesses. Counsel, instead, purportedly adopted the theory that the woman had fabricated the story to get attention. Counsel's adoption of this theory before fully investigating the facts of the matter constituted prejudicial inefective [sic] assistance.

23

Amended application at continuation sheet 4.

The Colorado Court of Appeals again disagreed:

> At the postconviction hearing, trial counsel testified that he decided that the jury was more likely to believe that the victim's motivation for allegedly fabricating the sexual assault was to gain attention from her parents. He further testified that he believed it was unwise to give the jury more than one basis for the victim's motivation to lie. Accordingly, counsel's decision was a strategic one. See Ardolino, supra.
>
> In addition, defendant made no showing regarding the substance, credibility, or admissibility of any testimony that would have been provided by the potential witnesses. See People v. Chambers, 900 P.2d 1249, 1252 (Colo. App. 1994) (defendant was unable to show prejudice where he "failed to produce any evidence as to who these potential witnesses might be, their willingness to testify . . . and the substance, credibility, or admissibility of their testimony"). Accordingly, counsel did not provide ineffective assistance by not calling those witnesses.

*Rath IV*, slip op., at 17-18. The Colorado Court of Appeals' conclusion that Mr. Rath's trial counsel did not provide ineffective assistance by his strategic decision not to investigate or call certain witnesses did not result in a decision that was contrary to, or involved an unreasonable application of, *Strickland*.

## G. False Evidence

Mr. Rath contends that "[t]he State used false evidence to obtain the conviction. Counsel knew of the perjured testimony but failed to notify the court of it. The jury relied on the false evidence to convict." Amended application at continuation sheet 4. Again, the Colorado Court of Appeals disagreed that counsel provided ineffective assistance because he did not object to allegedly false testimony given by one of the witnesses:

The witness testified that defendant had sexually assaulted her on a previous occasion. Defendant was charged with that assault and acquitted.

At the trial on the previous charges, the witness testified that she was on her way to work when defendant offered her a ride. However, it was shown during that trial that the witness had told five different police officers, as well as made a statement herself, that she was on her way home from a friend's house at the time of the alleged incident.

At the trial at issue in this appeal, the witness testified that she was on her way home from work when defendant offered her a ride.

Defendant contends that counsel was aware of the previous impeachment testimony, but failed to object to here [sic].

At the postconviction hearing, trial counsel testified that he did not believe such a slight inconsistency was relevant. He further testified that both he and defendant had made a strategic decision not to attack the credibility of the witnesses who were testifying that defendant had previously assaulted them. Instead, counsel had decided it would be better to attack the victim's credibility directly.

We conclude that counsel's decision not to object was a strategic decision. See Ardolino, supra. Even if we were to consider that the better practice was for counsel to have objected to the inconsistent testimony, we are unable to conclude that, but for counsel's failure to object, the result of the trial would like have been different. See Strickland, supra. Accordingly, defendant did not provide ineffective assistance in this regard.

Rath IV, slip op. at 18-19. The Colorado Court of Appeals' conclusion that Mr. Rath's

trial counsel did not provide ineffective assistance by his strategic decision not to object

to allegedly false witness testimony did not result in a decision that was contrary to, or

involved an unreasonable application of, Strickland.

H. Theory-of-Defense Instruction

25

Mr. Rath maintains that "[c]ounsel failed to tender a theory-of-the-defense instruction, impeachment instruction, or any defense instruction whatever."  Amended application at continuation sheet 4.

The Colorado Court of Appeals disagreed:

> The court must consider the jury instructions as a whole to determine whether the jury has been adequately informed regarding the defendant's theory of the case. People v. Dore, 997 P.2d 1214 (Colo. App. 1999).  In addition, the court may consider whether defense counsel's closing argument fairly represented the defendant's theory to the jury.  People v. Flanders, 183 Colo. 268, 516 P.2d 418 (1973).

> Defendant's theory of the case was that the victim was lying about the fact of the sexual assault.

> The jury was given the following instruction on witness credibility:

>> You may have to decide what testimony to believe.  You should consider all of the testimony given and the circumstances under which each witness has testified.

>> Consider each witnesses' [sic] knowledge, motive, state of mind, demeanor, and manner while on the stand.  Consider the witness' means of knowledge, ability to observe, and strength of memory.  Consider also any relationship each witness may have to either side of the case; the manner in which each witness might be affected by the verdict; and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.  You should consider all facts and circumstances shown by the evidence which affects the credibility of the witness' testimony.

>> You may believe all of the testimony of a witness, or part of it, or none of it.

> In addition, defense counsel argued throughout the trial and closing arguments that the victim was lying about the sexual assault.
>
> Accordingly, the jury was well aware of defendant's theory of the case and was properly instructed on what to consider in determining a witness's credibility. See Dore, supra. Therefore, counsel did not provide ineffective assistance by not tendering a specific theory of the case instruction.

*Rath IV*, slip op., at 20-21. The Colorado Court of Appeals' conclusion that Mr. Rath's trial counsel did not provide ineffective assistance by not tendering a theory-of-the-case instruction did not result in a decision that was contrary to, or involved an unreasonable application of, *Strickland*.

## I. Limiting Instruction

Mr. Rath maintains that "[c]ounsel failed to object to Constitutionally inadequate jury instructions given by the trial judge." Amended application at continuation sheet 4. In his amended opening brief and reply brief in *Rath IV*, Mr. Rath elaborated that the instructions limiting the jury's use of the other-acts evidence were inadequate and not given each time an other-acts witness testified. *See* ex. T, Amended Opening Brief of Defendant-Appellant, at 18, and ex. V, Reply Brief of Defendant-Appellant, at 12-13. The Colorado Court of Appeals found that counsel's decision not to object to the instructions was not unreasonable:

> After opening statements by counsel, the trial court referred to the "other acts or transactions involving the defendant some fourteen years ago." The court then told the jury, "[T]he defendant is on trial only for the two charges which I have read to you and none other." The court further instructed the jury that the evidence regarding previous alleged assaults was to "be considered and used as evidence only for the purpose of showing common plan,

scheme, or design, modus operandi, motive, or intent, and for no other purpose." The trial court gave this instruction three other times throughout the trial, and at one point, listed the names of the witnesses whose testimony was to be considered only for the limited purpose. The court also gave the jury a written instruction regarding the evidence that was admitted for a limited purpose.

Based on the numerous limiting instructions given by the trial court, counsel's decision not to object to the court's limiting instructions was not unreasonable. Accordingly, we conclude that counsel's performance was not deficient or defective. See Strickland, supra.

*Rath IV*, slip op. at 21-22. The Colorado Court of Appeals' conclusion that Mr. Rath's trial counsel did not provide ineffective assistance by not objecting to the trial court's limiting instructions to the jury did not result in a decision that was contrary to, or involved an unreasonable application of, *Strickland*.

### J. Motion for Judgment of Acquittal

Mr. Rath contends that counsel was ineffective for moving for judgment of acquittal in the presence of the jury. He claims he was prejudiced because the court's denial, also in the jury's presence, advised the jury of the court's opinion that there was evidence that he was guilty beyond a reasonable doubt. The Colorado Court of Appeals disagreed:

After the close of the prosecution's case, defense counsel moved for a judgment of acquittal while the jury was present in the courtroom. In denying the motion, the court stated that "there is evidence f[rom] which the jury could find beyond a reasonable doubt, if believed, that the defendant is guilty as charged; therefore, the motion is denied."

Defendant contends that this prejudiced him because it allowed the court "to tell the jury [that defendant] was guilty." Defendant's contention mischaracterizes the court's statement. The court determined that if the jury believed

28

> certain evidence that had been presented, it could find
> defendant guilty.
>
> In addition, after the defense presented its evidence,
> the court instructed the jury regarding the evidence
> presented, the applicable law, and the standard required for
> it to find defendant guilty. We presume the jury followed
> these instructions. See People v. Roy, 723 P.2d 1345 (Colo.
> 1986).
>
> Accordingly, we are unable to conclude that, but for
> counsel's alleged error, the result of the trial would likely
> have been different. See Strickland, supra.

Rath IV, slip op., at 23-24. The Colorado Court of Appeals' disposition of this claim

solely on the prejudice prong did not result in a decision that was contrary to, or

involved an unreasonable application of, Strickland.

## K. Motion for Mistrial

Mr. Rath maintains that "[c]ounsel failed to accept the trial judge's offer of a

mistrial on two discretionary judicial errors that would have barred reprosecution on the

charges." Amended application at continuation sheet 5. The Colorado Court of

Appeals disagreed that counsel provided ineffective assistance by not moving for a

mistrial when the trial court granted a continuance because a death occurred in a juror's

family:

> After the court was notified that the juror had suffered
> a death in her family, it inquired whether defendant wanted a
> mistrial declared or whether he wanted to continue the trial
> until the juror could return. Defendant agreed to the
> continuance. Defendant now contends that if he had been
> granted a mistrial, principles of double jeopardy would have
> prevented the state from trying him again.
>
> However, the trial court found, and we agree, that
> double jeopardy principles would not have prevented the
> prosecution from trying defendant again.

"If a criminal trial is terminated prior to its completion, double jeopardy will bar a second trial unless the trial court has sufficient legal justification for declaring a mistrial over the defendant's objection." People v. Berreth, 13 P.3d 1214, 1216 (Colo. 2006). In Berreth, the court listed situations where "manifest necessity" required the declaration of a mistrial. The court noted that other jurisdictions had determined that "manifest necessity" existed when "illness or death of member of juror's family" occurred. Berreth, supra, 13 P.3d at 1217 n.2. Consequently, manifest necessity to declare a mistrial existed here because a juror's family member had died.

We thus conclude that counsel's agreement to the continuance did not result in ineffective assistance.

*Rath IV*, slip op., at 27-28.

When a trial is not completed and a mistrial is declared, the Double Jeopardy Clause precludes the retrial of a defendant unless the defendant consented to the mistrial, *see United States v. Dinitz*, 424 U.S. 600, 607 (1976), or unless the mistrial was compelled by "manifest necessity." *See Arizona v. Washington*, 434 U.S. 497, 505 (1978). *See also Earnest v. Dorsey*, 87 F.3d 1123, 1128 (10th Cir. 1996). Here, it was not objectively unreasonable for the Colorado Court of Appeals to find that the death of a juror's family member constituted "manifest necessity" to declare a mistrial. Because principles of double jeopardy would not have prevented the prosecution from retrying Mr. Rath in a situation in which manifest necessity existed, counsel's agreement to the continuance did not result in ineffective assistance. Therefore, the state appeals court's conclusion that Mr. Rath's trial counsel did not provide ineffective assistance by agreeing to the continuance did not result in a decision that was contrary to, or involved an unreasonable application of, *Strickland*.

L. Counsel's Statements to the Jury

30

Mr. Rath maintains that:

> Counsel acted as counsel for the State during closing arguments. He falsely advised the jury that the petitioner had committed the "similar transactions" that the jury relied on to convict and slyly implied that the instant alleged misconduct had been committed in some way the jury wasn't allowed to hear about.

Amended application at continuation sheet 5. In his amended opening brief in *Rath IV*, Mr. Rath alleged that counsel made the following statements during closing: "'[Y]ou cannot convict somebody for something they did 14 years ago'"; "'Don't convict Russell Rath for his mistakes 14 years ago'"; "'Don't be thinking, ["]Well, maybe it happened in some way we're not hearing about.["]'" *See* ex. T, Amended Opening Brief of Defendant-Appellant, at 19.

The Colorado Court of Appeals rejected Mr. Rath's contention that his counsel provided ineffective assistance because he told the jury that Mr. Rath had committed the previous sex assaults:

> As we have repeatedly noted, the jury was properly instructed regarding the evidence presented, the applicable law, and the standard required to find defendant guilty. The jury was also given numerous limiting instructions regarding the evidence of alleged previous assaults. We presume that the jury followed these instructions. See Roy, supra.

> Therefore, even if counsel's comments in closing were erroneous and the jury mistakenly believed that defendant had committed previous assaults, the jury was nevertheless required to find defendant guilty beyond a reasonable doubt of the crimes charged in this case. Accordingly, we conclude that defendant failed to show how he suffered prejudice from counsel's statements during closing. See Strickland, supra.

*Rath IV*, slip op. at 24-25. The Colorado Court of Appeals' disposition of this claim solely on the prejudice prong did not result in a decision that was contrary to, or involved an unreasonable application of, *Strickland*.

## M. Conflict of Interest

Mr. Rath maintains that "[c]ounsel's close relationship with the district attorney for the case" constituted a conflict of interest. Amended application at continuation sheet 5. In *Rath IV*, Mr. Rath asserted that counsel had given money to the district attorney's election campaigns and would help him "in any way possible" when requested. *See* ex. T, Amended Opening Brief of Defendant-Appellant, at 19. In addition, Mr. Rath asserted that counsel's wife worked for the district attorney.

The Colorado Court of Appeals disagreed that Mr. Rath's trial counsel had a conflict of interest that denied him the right to a fair trial:

> If a conflict of interest is asserted, but the defendant failed to object to the alleged conflict at trial, the defendant is required to show that the attorney labored under an actual conflict of interest. Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). A mere potential conflict of interest will not justify post-trial relief. People v. Castro, 657 P.2d 932 (Colo. 1983). To make the requisite showing of an actual conflict of interest, the defendant must present at least an arguable basis for the underlying ineffective assistance of counsel challenges. People v. Wood, 844 P.2d 1299 (Colo. App. 1992).

> At the postconviction hearing, trial counsel testified that the district attorney had been a friend of his ever since he had tried cases against him. Counsel also testified that his wife had worked for the district attorney "years ago." Counsel testified that he did not have any professional or business relationships with the district attorney, but that he had contributed money to his campaigns.

> Defendant alleges that because of counsel's relationship with the district attorney, he failed to challenge outrageous prosecutorial misconduct. However, we have already rejected defendant's underlying claim of ineffective assistance of counsel in this regard. Accordingly, defendant has failed to show that an actual conflict existed, and we reject his contention. See Wood, supra.

*Rath IV*, slip op. at 25-26. As stated above, if at trial a defendant fails to object to a potential conflict, following his conviction, "[i]n order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler*, 446 U.S. at 350. Here, in determining that the performance of Mr. Rath's trial counsel had not been affected by counsel's friendship with the district attorney, the Colorado Court of Appeals applied *Cuyler* to find that Mr. Rath had failed to show a conflict of interest and, therefore, had failed to show that he received ineffective assistance of counsel under *Strickland*. The state appeals court's conclusion did not result in a decision that was contrary to, or involved an unreasonable application of, federal Supreme Court law.

### N. Appellate Counsel

In his tenth claim, Mr. Rath contends:

> The petitioner apprised appellate counsel, a state public defender, of the voir dire error and asked her to include it in the appeal. Counsel failed to do so because trial counsel, a personal friend, advised her that there was nothing of interest in the voir dire. Counsel's relationship with trial counsel prejudiced the petitioner; she failed not only to use the voir dire error on appeal, she failed on her friend's false assurance to even review the transcript of the proceeding. Appellate counsel's weaker issues were ultimately rejected by the state courts and the petitioner remains a convicted felon.

Amended application at continuation sheet 7. The Colorado Court of Appeals rejected Mr. Rath's claim because he failed to allege how he was prejudiced by trial counsel's statement to appellate counsel "'that there was nothing of interest in the voir dire.'" *Rath IV*, slip op., at 29. Claims of ineffective assistance of appellate counsel are to be evaluated like other ineffective-assistance-of-counsel claims under the performance and prejudice prongs of *Strickland*. *Malicoat v. Mullin*, 426 F.3d 1241, 1248 (10th Cir. 2005). Because the state appeals court evaluated this claim under the *Strickland* standard together with Mr. Rath's other ineffective-assistance-of-counsel claims, its decision is entitled to deference. *See id.*

"[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)); *see also Malicoat*, 426 F.3d at 1249. In determining whether counsel's performance was deficient for omitting an issue on appeal, "the court must consider the merits of the omitted issue." *Malicoat*, 426 F.3d at 1249 (citing *Smith*, 528 U.S. at 288). With regard to the prejudice prong of the *Strickland* standard, "[h]abeas relief is warranted only if the petitioner establishes a reasonable probability of a favorable result had his appellate counsel raised the omitted issue." *Malicoat*, 426 F.3d at 1249.

Here, the Colorado Court of Appeals determined that Mr. Rath was not prejudiced by appellate counsel's decision to omit his *voir dire* issue. Mr. Rath's claim is premised on the assertion that the trial transcript does not accurately reflect the prosecutor's question to the venire whether they would be able to convict Mr. Rath

without any evidence.  That premise is undermined by the appellate court's finding that

the record is accurate and that Mr. Rath's "bare assertions" were insufficient to

overcome the presumption that the record is accurate.  *Rath IV*, slip op. at 4.

Despite the omission of Mr. Rath's claim from his direct appeal, the Colorado

Court of Appeals considered the merits of the claim in *Rath IV*:

> Defendant contends that he was denied a fair trial because the prosecution asked potential jurors during voir dire whether they would be able to convict him "without any evidence," but the trial transcript does not accurately reflect this question.  Defendant presented two jurors' affidavits stating that the prosecution in fact asked them such a question.  We conclude that even if the prosecution asked that question, it was not reversible error.
>
> Defendant did not object to the alleged question during voir dire.  Accordingly, plain error is the appropriate standard of review.  See People v. Miller, 113 P.3d 743 (Colo. 2005).
>
> Plain error is obvious and substantial error that so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction.  Miller, supra.
>
> Here, the jury listened to the evidence presented by both the prosecution and the defense and was properly instructed on the law and the appropriate standards of proof. We presume that the jury followed those instructions.  See Medina v. People, 114 P.3d 845 (Colo. 2005).
>
> Accordingly, we conclude that any error that allegedly occurred from the prosecutor asking the jurors whether they could convict defendant without any evidence did not undermine the fundamental fairness of the trial, and therefore, did not rise to the level of plain error.

*Rath IV*, slip op. at 2-3.  Because the Colorado Court of Appeals ultimately considered

the merits of Mr. Rath's *voir dire* issue, he suffered no prejudice from appellate

counsel's omission of it. The Colorado Court of Appeals' disposition of this claim on the prejudice prong did not result in a decision that was contrary to, or involved an unreasonable application of, *Strickland*.

Claims Eight and Nine

As his eighth claim, Mr. Rath argues that "[j]udicial bias and error, in the individual acts and in their aggregate, denied the petitioner a fair trial by an impartial judge and jury." Amended application at continuation sheet 5. In claim nine, he argues that "[p]rosecutorial misconduct, in the individual acts and in their aggregate, denied the petitioner a fair trial by an impartial jury." Amended application at continuation sheet 7. Liberally construed, *see Haines*, 404 U.S. at 520-21, Mr. Rath's arguments in support of his contentions that the trial judge presided over the trial in an improper manner and that the prosecution committed misconduct assert due process violations. Both claims fail.

It is well established that the denial of due process in a state criminal trial "is the failure to observe that fundamental fairness essential to the very concept of justice." *Lisenba v. California*, 314 U.S. 219, 236 (1941). In order to declare a denial of due process, I must find that "the absence of that fairness fatally infected the trial." *Id.*; *see also Tapia v. Tansy*, 926 F.2d 1554, 1557 (10th Cir. 1991) (due-process claims entitle applicant to relief only if the alleged errors rendered the trial as a whole fundamentally unfair).

It is not enough that a prosecutor's remarks may have been improper. *Darden v. Wainwright*, 477 U.S. 168, 180 (1986) (claims of prosecutorial misconduct in a habeas petition are reviewed only for a violation of due process). The relevant question is

whether the prosecutor's comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id. (*quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). However, "not every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a 'failure to observe that fundamental fairness essential to the very concept of justice.'" *Donnelly*, 416 U.S. at 642 (quoting *Lisenba*, 314 U.S. at 236); *see also Patton v. Mullin*, 425 F.3d 788, 811 (10th Cir. 2005).

Whether a trial court's evidentiary and procedural rulings were so prejudicial in the context of the proceedings as a whole that Mr. Rath was deprived of the fundamental fairness essential to the concept of due process is a mixed question of law and fact. *Nichols v. Sullivan*, 867 F.2d 1250, 1253-54 (10th Cir. 1989). The sufficiency of the trial court's instructions to the jury involve questions of law, i.e., whether the faulty instructions undermined the fundamental fairness of the trial. *United States v. Toledo*, 985 F.2d 1462, 1465 (10th Cir. 1993). Prosecutorial misconduct is a mixed question of law and fact. *United States. v. Taylor*, 514 F.3d 1092, 1102 (10th Cir. 2008).

A. Judicial Misconduct

Mr. Rath first maintains that "[a]t an evidentiary hearing prior to trial, the judge demonstrated a 'bent of mind' favoring the State by acting as counsel for the prosecution in a ruling admitting proffered 'similar transaction' evidence." Amended application at continuation sheet 5. In *Rath IV*, Mr. Rath explained that "the judge added his own reason, sua sponte, for admitting [the evidence]," i.e., "to refute the Defendant's contention that the alleged victim's claim of sexual intercourse is a fabrication." *See* ex. T, Amended Opening Brief of Defendant-Appellant, at 22. The

Colorado Court of Appeals rejected the judicial misconduct claim for three reasons: (1) because giving an additional reason for granting a motion "does not equate to acting improperly on the state's behalf," (2) because trial courts are afforded "considerable discretion in determining the admissibility of evidence," and (3) because the supreme court affirmed the trial court's "admission of the evidence" on direct appeal. *Rath IV*, slip op., at 30-31.

Because the state appeals court did not address the merits of the federal habeas claim Mr. Rath raises here, I will exercise my own independent judgment in deciding the claim. *See Gipson*, 396 F.3d at 1196. My review of the trial transcript reveals that at the April 18, 1996, motions hearing, the trial judge heard oral argument on the People's Motion to Admit Evidence of Other Misconduct, *see* trial tr. vol. 1, 63-74, Mar. 8, 1996; took "under advisement" the issue of whether to admit similar-acts evidence; and stated that he would issue a written ruling in a few days. *See* trial tr. vol. 6, 43, Apr. 18, 1996.

On April 24, 1996, the trial judge issued an order, *see* trial tr. vol. 1, 99-101, Apr. 24, 1996, Order, in which he concluded that each of the proffered similar acts was admissible. He based his conclusion on finding such evidence to be "sufficiently reliable for the purpose of showing a common plan, scheme or design, modus operandi, motive or intent and to refute the defendant's contention that the alleged victim's claim of sexual intercourse or contact is a fabrication." *Id.* at 99. Mr. Rath objected to the latter portion of the trial court's statement.

I do not, as Mr. Rath argues, find that the trial judge was adding his own reason for admitting evidence of similar prior acts. Rather, I find that the trial court was providing two reasons that the similar-acts evidence was sufficiently reliable to admit.

38

Even if I were to construe the latter portion of the trial court's statement as giving his own reason for granting the motion, I do not find that the judge's actions rendered the trial as a whole fundamentally unfair. *See Lisenba*, 314 U.S. at 236. Therefore, I find that the state court's decision was not contrary to clearly established federal law set forth in *Lisenba*.

Secondly, Mr. Rath maintains that "[t]he judge mismanaged the trial by failing over defense objection to seat an alternate juror." Amended application at continuation sheet 5. The lack of an alternate resulted in a one-month continuance when the family member of one of the jurors died. According to Mr. Rath, this delay prejudiced the fairness of the trial because it occurred "between the complaining witness's fatally flawed testimony and the prejudicial 'similar transaction' testimony the jury received shortly before deliberations and which it convicted on." Amended application at continuation sheet 6. The Colorado Court of Appeals rejected Mr. Rath's contention because under state law a trial court is not required to empanel an alternate juror. *Rath IV*, slip op. at 31.

Again, because the state appeals court did not address the merits of the federal habeas claim Mr. Rath raises here, I will exercise my own independent judgment in deciding the claim. *See Gipson*, 396 F.3d at 1196. My review of the trial transcript reveals that the trial judge acknowledged to Mr. Rath, outside the presence and hearing of the jury, that defense counsel "did suggest" having an alternate juror, that the trial judge did not believe an alternate was necessary, and that his decision was the reason for the delay. *See* trial tr. vol. 8, 8, June 19, 1996. After the trial court pointed out that the only other alternative was to "declare a mistrial," defense counsel agreed to

continue the trial until July 15, 1996, and the prosecution "for purposes of appeal" asked to have included "on the record that the defendant is not requesting a mistrial at this time." *Id.* at 8-9. Mr. Rath then agreed with his counsel's decision not to ask for a mistrial. Mr. Rath may not, after agreeing to a continuance, now claim that the fairness of the trial somehow was prejudiced by the same continuance to which he agreed. Hence, I do not find that the judge's actions rendered the trial as a whole fundamentally unfair. *See Lisenba*, 314 U.S. at 236. Therefore, I find that the state court's decision was not contrary to clearly established federal law set forth in *Lisenba*.

Thirdly, Mr. Rath maintains that "[t]he judge failed in his duty to empanel an impartial jury by allowing the State to ask each juror if he or she could convict without evidence." Amended application at continuation sheet 6. The Colorado Court of Appeals briefly rejected Mr. Rath's claim because it "had already concluded" earlier in its opinion, *see Rath IV*, slip op. at 31, that "any error that allegedly occurred from the prosecutor asking the jurors whether they could convict defendant without any evidence does not undermine the fundamental fairness of the trial, and therefore, did not rise to the level of plain error." *Rath IV*, slip op. at 3.

In claim six discussed earlier in this opinion, I found that Mr. Rath had failed to rebut by clear and convincing evidence the Colorado Court of Appeals' conclusion that the trial record was correct and, therefore, I accepted the state appeals court's statement of the facts as correct. *See* 28 U.S.C. § 2254(e)(1). This claim of judicial misconduct is premised on the assertion that the trial transcript does not accurately reflect the question Mr. Rath contends the prosecutor posed to the venire.

That premise is undermined by the postconviction court's finding that Mr. Rath had not met his burden of proving that the trial transcript was inaccurate, as well as the appellate court's presumption that the record was correct and that Mr. Rath's "bare assertions" were insufficient to overcome this presumption. *Rath IV*, slip op. at 4. There can be no basis for a claim of judicial misconduct if the state record shows that Mr. Rath has no foundation upon which to rest this claim.

Hence, I do find that the judge's alleged act of allowing the prosecutor to ask the juror whether they could convict Mr. Rath without any evidence undermined the fundamental fairness of the trial. *See Lisenba*, 314 U.S. at 236. Therefore, I find that the state court's decision was not contrary to clearly established federal law set forth in *Lisenba*.

Mr. Rath next maintains that he was "extremely prejudic[ed]" when the judge denied the defense's motion for judgment of acquittal in the jury's presence. Amended application at continuation sheet 6. He made similar allegations in the context of his ineffective-assistance-of-counsel claim, discussed above in claim seven "J. Motion for Judgment of Acquittal." The Colorado Court of Appeals disagreed with Mr. Rath's contention that, in ruling on his motion for judgment of acquittal, the trial court told the jury that Mr. Rath had been proven guilty. The state appeals court noted that Mr. Rath did not object to the trial court's statement at the time it was made, and that after defense counsel's presentation of the evidence, the trial court properly instructed the jury. Presuming that the jury followed the instructions, the appeals court concluded that the trial court's statement did not undermine "the fundamental fairness of the trial." *Rath IV*, slip op., at 32.

41

My review of the record shows that, following the testimony of the four women who were involved in the prior sexual transactions involving Mr. Rath and an off-the-record conference held at the bench between the trial judge and counsel, defense counsel, in the presence of the jury, moved for judgment of acquittal "based on the fact that the People have not proven a prima facie case."  Trial tr. vol. 13, 43, July 17, 1996. In denying the motion, the trial judge found as follows:

> The Court:  All right.  Considering all the evidence, the Court finds that there is evidence for which the jury could find beyond a reasonable doubt, if believed, that the defendant is guilty as charged; therefore, the motion is denied.

*Id.*  In response, defense counsel stated, "We're ready to proceed."  *Id.*

I find nothing in the record indicating that defense counsel objected to the jury's presence when he moved for judgment of acquittal or that defense counsel objected to the trial court's finding in denying the motion for judgment of acquittal.  Moreover, there appears to be some confusion as to the jury's presence because the postconviction court noted that the transcript was ambiguous as to the jury's presence and that defense counsel's recollection was that the judge's denial of the motion for judgment of acquittal did not occur in front of the jury but rather occurred at the bench "which was where it was made."  Trial tr. vol. 16, 12-13, Feb. 2, 2004.  In any case, the postconviction court did not find any showing of harm of prejudice, given how the trial court worded its denial of the motion.  *Id.* at 13.  Neither did the Colorado Court of Appeals, which found that Mr. Rath had "mischaracterized" the court's statement.  *See Rath IV*, slip op.,  at 23.

I agree. The record simply does not corroborate Mr. Rath's unsupported belief that, by denying the motion, the trial judge told the jury that he had been proven guilty. Rather, the record shows that the trial judge, in denying the motion, merely stated that there was sufficient evidence, which if believed, could allow the jury to find the defendant, beyond a reasonable doubt, guilty as charged. Moreover, the trial court instructed the jury as to the applicable law, *see* trial tr. vol. 1, 121-139, July 17, 1996, and the record fails to indicate that defense counsel, when given the opportunity, found fault with the jury instructions. Trial tr. vol. 13, 81-82, July 17, 1996. I do not find that the trial court's denial of the motion for judgment of acquittal in the presence of the jury, assuming it occurred in the presence of the jury, undermined the fundamental fairness of the trial. *See Lisenba*, 314 U.S. at 236. Therefore, I find that the state court's decision was not contrary to clearly established federal law set forth in *Lisenba*.

Finally, Mr. Rath maintains that "[t]he judge failed in his duty to protect the petitioner from a convic[tion] by an improperly instructed jury when he gave inadequate oral and written 'similar transaction' limiting instructions." Amended application at continuation sheet 6. The Colorado Court of Appeals rejected this claim, finding that the trial court "gave limiting instructions on the similar acts evidence at four different times during the trial" and gave the jury "a written instruction emphasizing the limited purpose for which the evidence was admitted." *Rath IV*, slip op., at 33-34. Taking these cautionary instructions into account, the appeals court concluded that the trial court sufficiently instructed the jury and that no plain error occurred.

Once again, because the state appeals court did not address the merits of the federal habeas claim Mr. Rath raises here, I will exercise my own independent judgment

in deciding the claim. *See Gipson*, 396 F.3d at 1196. In Mr. Rath's first claim, discussed earlier in this opinion, that similar-transaction evidence improperly was admitted at trial, I found it to be clear from the state record that the trial court repeatedly instructed the jury to consider the other-acts evidence only for the specified, limited purpose of showing common plan, scheme or design, modus operandi, motive, or intent, and for no other purpose. *See* trial tr., vol. 7, 53, June 18, 1996; vol. 11, 268, July 15, 1996; vol. 12, 68-69, July 16, 1996; vol. 13, 28, July 17, 1996; *see also* vol. 1, 99-101, Apr. 24, 1996, Order, referring to trial tr., vol. 6, 5-43, Apr. 18, 1996. I did not find that the probative value of the prior-acts evidence was outweighed substantially by any unfair prejudice. Having decided as such, I did not find that having the jury consider the prior-acts evidence for limited, specified purposes rendered the trial as a whole fundamentally unfair as to constitute a denial of federal constitutional rights. For the same reasons, I do find that the judge's oral and written limiting instructions were so inadequate as to undermine the fundamental fairness of the trial. *See Lisenba*, 314 U.S. at 236. Therefore, I find that the state court's decision was not contrary to clearly established federal law set forth in *Lisenba*.

Because Mr. Rath's numerous arguments fail to support his contentions that the trial judge presided over the trial in an improper manner, the eighth claim that "[j]udicial bias and error, in the individual acts and in their aggregate, denied the petitioner a fair trial by an impartial judge and jury," amended application at continuation sheet 5, fails.

## B. Prosecutorial Misconduct

Mr. Rath cites to three instances of prosecutorial misconduct: (1) the prosecutor's *voir dire* question about the evidence; (2) the prosecutor's closing

argument comment that Mr. Rath had committed previous sexual assaults; and (3) the prosecutor's presentation of allegedly perjured testimony of the victim of one of the other acts. The Colorado Court of Appeals rejected the first two allegations out of hand because it had rejected them in other contexts. As to the third allegation, the appeals court determined that "[a]lthough this testimony is inconsistent, we can hardly say that the prosecution's alleged misconduct so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the defendant's convictions." *Rath IV*, slip op., at 35.

I need not discuss a fourth time Mr. Rath's claim of prosecutorial misconduct based upon the prosecutor's alleged *voir dire* question about the evidence because I have discussed and rejected this claim three times in other contexts earlier in this opinion. *See* discussions above of claims six, seven "N. Appellate Counsel," and eight "A. Judicial Misconduct."

Mr. Rath next contends that in his closing argument the prosecutor committed misconduct by commenting that Mr. Rath had committed previous sexual assaults. He specifically contends that the prosecutor told the jury "'Thers's [sic] no doubt he did those things to those women. It's uncontroverted.'" *See* Points and Authorities in Support of Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 at 35.

My review of the record shows that, in his closing argument, the prosecutor focused on the similar-transaction evidence in order to establish that Mr. Rath had a sexual assault "modus operandi." *See* trial tr., vol. 13, 84, July 17, 1996. The prosecutor, in referring to the prior-acts testimony of four other women, commented, "There's no doubt he did those things to those women. It's uncontradicted." *Id.* at 100.

The "those things" to which the prosecutor referred were the commonalities among the prior sexual assaults, such as the age of each young victim, the offer of a ride to each victim Mr. Rath picked up in his vehicle, the drive to a secluded location, the presence of a camera and the gift of money to three of the four victims, and the remark about a unique physical characteristic of each victim. These similarities were evidence the jury was allowed to consider. The prosecution was allowed to talk about these similarities in order to prove its case beyond a reasonable doubt that Mr. Rath used the same modus operandi to assault sexually the victim in this case and that the victim did not, as defense counsel argued, fabricate the sexual assault. I do not find that the prosecutor's comments, made in the context of closing argument, so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of Mr. Rath's convictions. Therefore, I find that the state court's decision was not contrary to clearly established federal law set forth in *Darden*, *Donnelly*, and *Lisenba*.

Finally, Mr. Rath contends that the prosecutor committed misconduct by his presentation of alleged perjured testimony of the victim of one of the other acts. I will presume for purposes of this claim that the perjured testimony to which Mr. Rath refers is that of L.L., whose testimony he challenges in his supporting brief. He specifically contends that L.L. was not going to work the day of the alleged sexual assault, despite the fact that she testified she was going to work that day. He maintains that if the jury had known she had perjured herself, the jury would have discounted her entire testimony and not have convicted him. He made similar allegations in the context of his ineffective-assistance-of-counsel-claim, discussed above in claim seven "G. <u>False Evidence</u>."

The Colorado Court of Appeals found that, although this witness's testimony was inconsistent, "we can hardly say that the prosecution's alleged misconduct so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of defendant's convictions." *Rath IV* at 35. My review of the record reveals that, in response to a question by the prosecution on direct examination, L.L. did testify that at 8 or 8:30 a.m. on February 24, 1982, the day of the sexual assault, she was walking to work at Pizza Hut. Trial tr. vol. 13, 30, July 17, 1996. However, nothing in the record indicates that defense counsel objected to L.L.'s testimony as to what she was doing the morning of February 24, 1982. In fact, the record indicates that, following direct examination of L.L., defense counsel stated that he had "no questions" for L.L. *Id.* at 43. I fail to see how the prosecutor's question as to where L.L. was walking the morning of February 24, 1982, or any inconsistency concerning her testimony as to where she was headed on the day of the sexual assault, rises to the level of misconduct by the prosecutor in the presentation of perjured testimony. Therefore, I find that the Court of Appeals' determination that the prosecutor's alleged misconduct did not undermine the fairness of the trial was neither contrary to nor an unreasonable application of clearly established federal law set forth in *Darden*, *Donnelly*, and *Lisenba*.

<u>Claim Eleven</u>

Mr. Rath's final contention is that his rights were violated because Colorado law was applied selectively to his case. He maintains that "[s]elective application of state law denied the petitioner due process and a fair trial." Amended application at continuation sheet 8. He specifically contends that "[t]he courts allowed the State to use the testimony of six 'similar transaction' witnesses under one rule of evidence [Rule 403

47

of the Colorado Rules of Evidence] but denied the petitioner access to relevant evidence [confidential social services records of the victim] under another rule." *Id.* He contends that this "selective application of state law tilted the 'playing field' grossly in favor of the State and denied the petitioner's fundamental right to a fair trial." *Id.* His claim that the evidence of similar prior acts was not evaluated properly pursuant to Colo. R. Evid. 403 and that it was error not to admit the victim's social services records into evidence is without merit.

As previously stated earlier in this order, federal habeas corpus review does not ordinarily extend to state court rulings on the admissibility of evidence. *See Estelle*, 502 U.S. at 67-68; *Moore*, 254 F.3d at 1246. When the admission of evidence in a state trial is challenged on federal habeas, the only question is "whether the error, if any, was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Williamson v. Ward*, 110 F.3d 1508, 1522-23 (10th Cir. 1997).

The Colorado Court of Appeals found that the rulings concerning both matters, i.e., the admissibility of the victim's social services records and the admissibility of the similar-acts evidence, were affirmed on direct appeal in *Rath I* and *Rath II* respectively. *Rath IV*, slip op., at 36-37. Because Mr. Rath's eleventh claim is no more than a challenge to the state court's application of state law, it is not cognizable in this habeas corpus action. Accordingly, it is

ORDERED that the amended habeas corpus application is DENIED WITH PREJUDICE and the action is DISMISSED. It is

FURTHER ORDERED that each party shall bear his own costs and attorney's

fees.

Dated:  May 1, 2008

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge